White, J.
This case is not free from difficulty, and its determination has engaged the most attentive consideration of the court.
We do not propose, however, to enter into a detailed examination of the authorities cited and relied upon by the counsel of the respective parties; but shall content ourselves mainly with stating the grounds upon which our conclusion is founded.
1. The undertaking of a banker to his customers is to pay their checks or bills according to the law-merchant. If the bill or check is payable to order, it is an authority to pay to any person who becomes holder by a genuine indorsement.
If the paper is originally payable to bearer, or if there is afterward a genuine indorsement in blank, it is an authority to pay to the person who seems to be the holder. Robarts v. Tucker, 16 Q. B. 560 (71 Eng. C. L. 559).
In this case it .was laid down that the banker cannot charge his customer with any other payments than those *246 made in pursuance of that authority, unless (1) the circum stances amounted to a direction from the customer to the banker to pay the paper without reference to the genuineness of the indorsement; or (2) were equivalent to a subsequent admission that the indorsement was genuine, in reliance on which the banker was induced to so alter his position as to preclude the customer from showing the indorsement to be forged.
Applications of the general rule are found in the following cases:
In Graves v. The American Exchange Bank (17 N. Y. R. 205), it was held that the drawee of a bill of exchange is bound to ascertain that the person to whom he makes payment is the genuine payee or is authorized by him to receive it. And that it is no defence against such jayee that the drawee, in the regular course of business, and with nothing to excite suspicion, paid the bill to a holder in good faith and for value under the indorsement of a person bearing the same name as the payee.
Morgan v. The Bank of The State of New York (1 Kernan’s R. 404), was a suit against the bank for money deposited with it by the plaintiff. The defendant produced a check upon the bank, which it had paid, for the amount of the money, signed by the plaintiff and payable to the order of Oorless & Co., and with the name of this firm written upon it; it was proved that this was not the indorsement of the firm, and that it never owned or had any interest in the check. The court held the payment of the check to be no defence.
In Vanbbiber v. The Bank of Louisiana (14 La. An. R. 481), it was held that a bank is liable to the payee of a check made payable to his order, when the check is paid on a forged indorsement made by the collector of the payee, who received the check in payment of a bill of merchandise entrusted to him for collection by his employer.
In the opinion in this case the court say: “ The bank holds the money of its depositors, subject to be checked for, as their agent. When, then, the bank receives a check *247 instructing them to pay a certain part of the deposit of the drawer to a third party, and the bank agrees so to do by its general custom, and by undertaking to pay it upon the sup* posed indorsement of the third party, the amount of the money represented by the check, and on deposit as that of the drawer, becomes eo instante the property of the payee, and the bank, from the moment it undertakes to pay the check, holds the amount of the cheek as the agent of the payee, and is responsible to the payee, as his agent, if it pays it upon a forged indorsement.”
In Talbot v. Bank of Rochester (1 Hill R. 295), the prin ciple was decided that the owner of negotiable paper had his election to sue the party taking and collecting it under a forged indorsement, either in trover for its conversion, or to recover its amount in an action for money had and received. See also Shaffer v. McKee, 19 Ohio St. 526.
2. Do the facts of this case bring it within either of the exceptions, before stated, to the general rule as to the liability of the bank to its customer, the drawer?
As to the first exception named, it seems to us they do not. We find nothing in the agreed statement amounting to a direction from Stryker, the drawer, to the bank, to pay the check without reference to the genuineness of the indorsement. On the contrary, the circumstances negative the idea of the existence of any such direction or authority. Stryker, the paymaster, on receiving the voucher required the person presenting it to identify himself as Frederick B. Dodge. This the person said he could do at the bank; and, thereupon, the check was given to him payable to the order of Frederick B. Dodge, with the understanding and expectation that it would be paid only in case he identified himself as the payee, or procured the indorsement of the latter.
If the person in presenting the voucher had been in fact authorized by Dodge, or had assumed to be his mere agent instead of assuming to be Dodge, himself, the check might properly have been given in the way it was. In such case, if the bank had paid the check on the forged indorsement, we dc not understand it to be claimed that such payment would *248 have discharged the bank from liability. Yet the facts known to the bank and on which it acted in making the payment in the present case do not differ from what they would have been in the case supposed. From the agreed statement it appears that the bank paid the check on the representation of the bearer that he was the payee, and on his indorsing it with the payee’s name, without exercising any other precaution or making any further inquiry.
The ground on which the bank is claimed to be discharged from liability, is the alleged negligence of Stryker in not requiring the person to whom the check was given to identify himself as Frederick R. Dodge, the owner of the voucher. It is not claimed that any fraud was intended, or that the drawer, in the manner of giving the check, violated any arrangement or understanding between himself and the bank.
On this branch of the case wo are not unanimous. But it seems to a majority of the court that as it was competent fox the drawer to make his check payable to the order of Dodge and devolve the duty on the bank of paying only on Dodge’s genuine order, the liability of the bank cannot be affected or discharged by any act or omission of the drawer in issuing the check, of which the bank had no notice, and which in no way influenced its conduct. This principle is distinctly recognized in Robarts v. Tucker, supra.
In regard to the application of the second exception above stated, to this case, viz.: the evidence of the subsequent implied admission of Stryker that the check had been paid to the proper party, arising from his taking up the check on settlement with the bank, it is sufficient to say, that whatever might be the effect in a controversy between the bank and Stryker, it cannot impair the rights which the plaintiff was then known to assert against the bank.
'It appears, by the agreed statement, that Stryker settled with the bank with knowledge of the “ claim of the plaintiff.” We understand “the claim of the plaintiff” to rcfei to his claim against the bank, and which he, shortly afterward,, brought his suit in the court below to enforce. The bank had charged the check against the drawer, and on the settle *249 ment, received credit for the amount as so much of his deposit appropriated to its payment.
3. The remaining question is whether the plaintiff could ratify the giving of the check in his name, and thus make it his own.
We think he could, as well against the bank as against Stryker, and that by the agreed statement he is shown to have done so.
It is a maxim that a subsequent ratification has a retrospective effect, and is equivalent to a prior command.
An instance of the application of the maxim is, “ that if the goods of A. are wrongfully taken and sold, the owner may bring trover against the wrongdoer, or may elect to consider him as his agent — may adopt the sale and maintain an action for the price.” Broom’s Maxims, *p. 834.
So in this case, though the possession of the voucher by the person presenting it to the paymaster was tortious, the plaintiff could adopt its surrender and the receipt of the check in exchange, as the act of his agent.
The thief, if such he was, had no right to the check, either as against the plaintiff or the paymaster. As against him the plaintiff could ratify the exchange of the voucher for the check and claim the check; and such ratification would be good against the paymaster while he retained the voucher. As against the plaintiff the paymaster could not claim both check and voucher.
The effect of the ratification was to make the check the property of the plaintiff; but he did not thereby impliedly authorize the indorsement of the check. An agency to receive a check payable to order implies no authority to indorse it in the name of the principal.
The transaction with the paymaster is distinct from that with the bank. The ratification of the former excludes the idea of a ratification of the payment by the bank. The check was made payable to the order of the plaintiff for his protection and benefit; the bank paid it in its own wrong without authority from him or the drawer.
But it is said that if a ratification be allowed, as between *250 the plaintiff and the paymaster, it ought not to affeet the bank, a third party.
The answer to this is, that the bank dealt with the trans action as it was finally ratified, and did nothing on the idea of its being unauthorized.
In the opinion of a majority of the court the judgment of the district court and of the court of common pleas must be reversed and the cause remanded for a new trial.
Brinkerhoff, C.J., and Scott and Day, .J.J., concurred.